No. 25-01627

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

PRESIDENT AND FELLOWS OF HARVARD COLLEGE,

*Plaintiff-Appellee*,

v.

UNITED STATES DEPTARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in the official capacity as Secretary of the United States Department of Homeland Security; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD LYONS, in the official capacity as Acting Director of United States Immigration and Customs Enforcement; STUDENT AND EXCHANGE VISITOR PROGRAM; JOHN DOE, in the official capacity as Director of the Student and Exchange Visitor Program; JAMES HICKS, in the official capacity as Deputy Assistant Director of the Student and Exchange Visitor Program; UNITED STATES DEPARTMENT OF JUSTICE; PAMELA BONDI, in the official capacity as Attorney General of the United States; UNITED STATES DEPARTMENT OF STATE; MARCO RUBIO, in the official capacity as Secretary of the United States Department of State,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**BRIEF OF INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMANCE**

Daniel M. Eisenberg
Sana Mayat
Emery Celli Brinckerhoff Abady
  Ward & Maazel LLP
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
deisenberg@ecbawm.com
smayat@ecbawm.com

Norman L. Eisen
Stephen A. Jonas
Joshua G. Kolb
State Democracy Defenders Fund
600 Pennsylvania Avenue S.E.
Suite 15180
Washington, D.C. 20003
(202) 594-9958
Norman@democracydefenders.org
Steve@democracydefenders.org
Joshua@democracydefenders.org

*Counsel for Amicus Curiae*

## TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................... ii

CORPORATE DISCLOSURE STATEMENT ........................................................1

INTEREST OF AMICI CURIAE ..............................................................................2

SUMMARY OF BRIEF ............................................................................................2

ARGUMENT .............................................................................................................3

CONCLUSION ..........................................................................................................9

CERTIFICATE OF COMPLIANCE .......................................................................10

CERTIFICATE OF SERVICE ................................................................................11

## TABLE OF AUTHORITIES

No citations referenced herein.

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* does not have any parent corporation or any publicly held corporation that owns 10% or more of its stock.

/s/ Daniel M. Eisenberg

Dated:  October 6, 2025

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* is the United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) ("UAW"), one of the largest unions in North America, with nearly 1,000,000 active and retired members throughout the United States, Canada, and Puerto Rico who work in every sector of the economy.[1] UAW's members are United States citizens and foreign nationals lawfully working in the United States. UAW and its affiliated locals represent approximately 120,000 workers in higher education, including graduate students, postdoctoral scientists, researchers, university staff, and faculty. Of these, UAW and its affiliated locals represent more than 40,000 academic student employees and post-doctoral researchers at more than 27 institutions across the country, including Harvard University ("Harvard").

## SUMMARY OF BRIEF

In May 2025, the Department of Homeland Security and other Defendants ("Defendants") abruptly revoked Harvard University's Student and Exchange Visitor Program certification (the "Policy"), which effectively invalidated at least two visa types that allow UAW's foreign national members to study and be employed by Harvard: the F-1 and J-1 visas. Since adoption of the Policy, UAW's

---

[1] No party has objected to filing of this brief. No counsel for a party authored this brief in whole or in part, and no person other than *amicus curiae* and their counsel made a monetary contribution to its preparation or submission.

2

current and future members—the world's most promising minds who will become global leaders of industry, science, politics, and more—are rearranging their career plans, separating from loved ones, and developing contingency plans in case they are wrongfully detained or their immigration status changes on a dime.

UAW's members at Harvard have become collateral damage to Defendants' rush to punish Harvard, and UAW's members employed elsewhere are watching these events unfold with horror as they imagine what they will do if and when Defendants come for them.  Defendants' arbitrary and cruel swings in immigration policy that are the subject of this lawsuit and appeal are ushering some of the world's brightest minds out of the United States to other countries with a more stable immigration regulatory framework and consistent application of the law.  We are losing UAW's members' unique skills, training, and inspiration.  By harming UAW's members, Defendants are harming all of us—eroding our civic life, our social cohesion, and our country's ability to lead the twenty-first century.

## ARGUMENT

UAW's members at Harvard are high-achieving students and faculty pursuing critical areas of work spanning molecular and cellular biology, public health and infectious disease, and history.  They have spent decades receiving training and education in highly specialized fields that will shape industry and civic life for decades to come.  The purpose of this brief is to offer the Court some

3

representative examples of the consequences of the Policy and Defendants' actions for UAW's current and future members.

***Loss of cutting-edge scientific expertise.*** One of UAW's members is a foreign national studying molecular and cellular biology who became a post-doctoral student at Harvard on a J-1 visa after receiving a PhD from a renowned British University. He now works in a laboratory at Harvard that is pioneering a new form of biological imaging at the forefront of the multibillion-dollar microscopy industry. Prior to the Policy, he had planned to build a life in the United States with his wife, a medical doctor. But now, he has had to squeeze his five-year research project into one year with no guarantee of continued funding. He plans to leave the United States to avoid being subjected to an unstable immigration regulatory framework that could keep him and his wife separated across borders. After leaving Harvard, our member plans to establish his microscopy lab outside of the United States.

Another of UAW's members is a PhD student at Harvard studying and teaching public health and infectious disease on an F-1 visa. Her work focuses on curbing the spread of infectious disease in the Global South—a discipline critical for the United States as climate change pushes certain disease vectors north, across our borders, for the first time. Due to the Policy and instability of Defendants'

4

immigration regime, she has decided to leave the United States as soon as her program ends. She will not look for work in this country.

***Creating instability.***  One of UAW's members received a graduate degree from Harvard in 2025 on an F-1 visa, where she studied comparative democratic politics and civil rights. During her time at Harvard, she built a home and life in Massachusetts and fell in love with a classmate. "Those were the best two years of my life. They were magical," she recalls. She had received a post-Harvard job offer in the United States but learned—while on the plane returning to the United States from an international student trip to Europe—that her visa was in jeopardy because of the Policy. She was detained for five hours at the airport while her belongings were confiscated and searched. Afraid and alone, she sobbed as officers handcuffed and separated others passing through customs at the same time. After five hours, officers returned her belongings and set her free without any explanation. Shaken and traumatized, she has chosen safety and security over her American future and partner, returning to her country of origin and pursuing work there. She said: "The attacks kept coming. It was not a situation that was going to end any time soon."

Another UAW member said that "We are looking at years of uncertainty in building communities and lives in America. Years of uncertainty on campus. We cannot maintain or develop personal relationships where there is a strong

5

possibility of losing them." That member continued: "My partner and I have a cat, an apartment, and rent. There are a lot of logistical issues with my being immediately deported. Not to mention I love [my partner]. [The Policy] puts a timeline on any relationship, but particularly now, where the possibility of exile is high." Another UAW member echoed these sentiments: in this climate, "I do not know how to plan ahead. It is destabilizing." And yet another UAW member said: "I am worried about the situation because it is extremely volatile, uncertain, and fluid. I don't know if the government will find new ways to bar students from coming to the United States. That's the biggest thing: even when you have a visa and they put you under administrative processing, you still can't be sure if you'll be able to come to the United States to maintain your studies."

The Policy is also impacting prospective Harvard students (and prospective UAW members). Prospective students are anxiously tracking Defendants' statements and actions in an attempt to divine whether they will be safe in the United States while pursuing their studies at Harvard. They worry about entering the United States lawfully but then being detained at the airport upon arrival, or having their immigration status stripped in the middle of their coursework.

***"You are not safe here."*** One of UAW's prospective members is a European student pursuing a master's degree at the Harvard Divinity School on an F-1 visa. She came to Harvard because schools in her home country did not offer

sufficient academic freedom. While she planned to remain in the United States after receiving her degree, contributing to our vibrant spiritual and religious life, she has changed course following the Policy. "I felt dehumanized and as if I didn't have any dignity as a human. I felt like a pawn in a game of chess against Harvard." She tells other international students who ask her about her experience here: "I no longer recommend going to the United States to study. The education is great, but you are not safe here." A new Harvard Law School student told us: I am torn between the beliefs that "the United States is one of the best places in the world to meet people, foster ideas, and drive change" and "a much stronger feeling that you're no longer welcome here."

***Chilled civic life and constitutionally-protected speech.*** UAW's members are afraid of immigration reprisal—lawful or not—for expressing opinions that Defendants may perceive as hostile to the current administration. UAW's faculty members are afraid of teaching in-person classes at a time when Defendants are effectively abducting students from campus. One foreign national faculty member said:

> There were moments this semester where non-citizens were afraid to go to class. I was afraid to go teach. Most of us are not fully able to do our jobs at the moment. How many sick days can I use? How many personal days per semester? I don't feel safe at school, and I don't know what is a private area or a public area.

7

UAW's faculty and student members are afraid of protesting, signing advocacy letters, or organizing. They are afraid of having social media accounts. "There are student kidnappings by ICE so people are scared to speak up," said one of UAW's prospective members.

As one of UAW's student members explained: "I have to be cautious about what and who I talk to. I am afraid that I can be under suspicion simply because of what I choose to study, and I'm worried about being interrogated if I leave the country and try to re-enter." Another member said: "[Because of the Policy,] we have to change how we talk about ourselves." And another member explained that at Harvard, there are so many people from different cultures and countries to learn from. "That's what makes Harvard, Harvard." But the free exchange of ideas and cultures cannot occur in this climate. In its place is the acute sense that Harvard's faculty and students can be swept away by the awesome power of the United States federal government on a moment's notice.

# CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's grant of a preliminary injunction.

Respectfully Submitted,

Counsel for *Amicus Curiae*,

/s/ Daniel M. Eisenberg
Daniel M. Eisenberg
Sana F. Mayat
EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
deisenberg@ecbawm.com
smayat@ecbawm.com

Norman L. Eisen
Stephen A. Jonas
Joshua G. Kolb
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue S.E.
Suite 15180
Washington, D.C. 20003
(202) 594-9958
Norman@democracydefenders.org
Steve@democracydefenders.org
Joshua@democracydefenders.org

Dated:     October 6, 2025

## **CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limits of Fed. R. App. P. 32(a)(7) and Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 1,597 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2024 in 14-point Times New Roman.

Dated:  October 6, 2025                                          /s/ Daniel M. Eisenberg

## CERTIFICATE OF SERVICE

 I certify that on October 6, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

                /s/ Daniel M. Eisenberg